O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYSCO RIVERSIDE, INC., <br>                   Plaintiff, <br><br>      v. <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 495, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 683; DOES 1-50 <br>                   Defendants. | Case No.  EDCV 19-01352 DDP (KKx) <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Dkts. 39, 47, 51] |

Presently before the court are the parties' cross-motions for summary judgment. (Dkts. 39, 47, 51.)  Having considered the submissions of the parties and heard oral argument, the court denies the motions and adopts the following order.

**I. BACKGROUND**

Plaintiff Sysco Riverside, Inc. ("Sysco") is a Delaware Corporation with its principal place of business in Riverside, California.  (Dkt. 1, Compl. ¶ 2; *see also* dkt. 50, Union SUF #1.)  Sysco employs drivers, warehouse personnel, fleet maintenance

employees, inventory control clerks, and quality assurance personnel.  (Dkt. 49, Lee Fletcher Decl., Ex. A, Collective Bargaining Agreement at 39-40[1] (hereinafter, "CBA"); dkt. 51-2, Patrick R. Oliver Decl. ¶ 4.)  Defendant Local Union 683 of the International Brotherhood of Teamsters ("Local 683") is a labor organization with its offices in El Cajon, California.  (Compl. ¶ 5; Union SUF #2.)  Local 683 represents Sysco drivers and warehouse personnel as part of one bargaining unit.  (Dkt. 51-2, Oliver Decl. ¶ 4.)  Sysco and Local 683 are parties to a collective bargaining agreement for the period July 30, 2017 through January 6, 2024.  (*Id.* ¶ 5; CBA.)  Initially, the CBA did not include a bargaining unit for "inventory control clerks" or "quality assurance personnel," these employees were unrepresented.  (Dkt. 81-2, Oliver Decl. ¶ 6.)  On April 17, 2018, Local 683 filed a representation petition with the National Labor Relations Board ("NLRB") seeking to represent the inventory control clerks and quality assurance personnel.  (*Id.* ¶ 8.)  On May 10, 2018, the NLRB certified Local 683 as the representative of the inventory control and quality assurance employees.  (*Id.* ¶ 9.)

From May 2018 to July 2019, Sysco and Local 683 engaged in various bargaining sessions regarding the inventory control and quality assurance employees.  (Dkt. 51-2, Oliver Decl. ¶¶ 8-20; dkt. 53, Fletcher Decl. ¶¶ 4-8.)  The parties were unable to reach an agreement.  (Dkt. 51-2, Oliver Decl. ¶¶ 8-20; dkt. 53, Fletcher Decl. ¶¶ 4-8.)  On July 19, 2019, Local 683 filed an unfair labor practice strike with the National Labor Relations Board alleging that Sysco unlawfully declared an impasse and failed to bargain in good faith.  (Dkt. 53, Fletcher Decl. ¶ 9, Ex. 11; Dkt. 51-2, Oliver Decl. ¶ 18.)  Local 683 also requested and received strike sanctions from the Joint Council of Teamsters No. 42 ("Joint Council") for the inventory control clerks and quality assurance employees.  (Dkt. 49, Fletcher Decl. ¶ 5, Ex. 2.)  From July 21, 2019 to July 23, 2019 the inventory control and

---

[1] CBA pin cites refer to Exhibit A page numbers.

2

quality assurance personnel went on strike and picketed at Sysco's facilities. (Dkt. 49, Fletcher Decl. ¶¶ 5, 6, Ex. 2.)

During the strike, employees covered by the existing CBA—drivers and warehouse personnel—informed Sysco that they would honor the strike and refused to cross the picket line. (Dkt. 51-2, Oliver Decl. ¶¶ 24-26; Dkt. 49, Fletcher Decl. ¶ 9.) According to Sysco, Local 683 members covered by the existing CBA were not permitted to strike and the members' refusal to report to work from July 21, 2019 to July 23, 2019 constituted an illegal strike under the terms of the existing CBA. (Dkt. 51-2, Oliver Decl. ¶ 28.) According to Local 683, Article 10, Section 1 of the CBA, permitted these employees to refuse to cross a legitimate and bona fide picket line because the strike was sanctioned by the Joint Council. (Fletcher Decl. ¶¶ 7-9, Ex. 2.)

Based on the events described above, Sysco filed this action against Local 683 claiming that Local 683 breached the CBA when employees covered by the existing CBA refused to cross the inventory control clerks and quality assurance personnel's picket line. (*See* Compl.; Dkt. 51-2, Oliver Decl. ¶¶ 26-31.) The parties filed cross motions for summary judgment. (Dkt. 51, Dkt. 48.) Sysco moves for summary judgment contending that the undisputed facts demonstrate that Local 683 breached the CBA. (Dkt. 51, Sysco MSJ.) Local 683 moves for summary judgment contending that it did not breach the CBA and, alternatively, if there is a dispute regarding the interpretation of the CBA, the dispute to be submitted to arbitration pursuant to Article 14 of the CBA. (Dkt. 48, Local 683 MSJ.)

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those

3

1  portions of the pleadings and discovery responses that demonstrate the absence of a
2  genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All
3  reasonable inferences from the evidence must be drawn in favor of the nonmoving party.
4  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not
5  bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate
6  that "there is an absence of evidence to support the nonmoving party's case." *Celotex*,
7  477 U.S. at 323.

8  Once the moving party meets its burden, the burden shifts to the nonmoving party
9  opposing the motion, who must "set forth specific facts showing that there is a genuine
10 issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party
11 "fails to make a showing sufficient to establish the existence of an element essential to
12 that party's case, and on which that party will bear the burden of proof at trial." *Celotex*,
13 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury
14 could return a verdict for the nonmoving party," and material facts are those "that might
15 affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There
16 is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational
17 trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio
18 Corp.*, 475 U.S. 574, 587 (1986).

19 It is not the court's task "to scour the record in search of a genuine issue of triable
20 fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to
21 lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th
22 Cir. 2001). The court "need not examine the entire file for evidence establishing a
23 genuine issue of fact, where the evidence is not set forth in the opposition papers with
24 adequate references so that it could conveniently be found." *Id.*
25 ///
26 ///
27 ///
28

4

**III. DISCUSSION**

    **A. Local 683 Waived Arbitration**

Local 683 argues, alternatively, that if the issue of whether the employees covered by the CBA cannot be summarily adjudicated in favor of the union, the dispute is covered by the grievance and arbitration clause in Article 14. (Local 683 MSJ at 3, 9-10.) Sysco contends that Article 14 does not apply to employer-initiated disputes, and in any event, even if the dispute fell within the grievance and arbitration procedure, Local 683 waived arbitration. (Dkt. 56, Sysco Opp. at 8-12.) According to Sysco, Local 683 knew of the arbitration provision, acted inconsistently with its intention to arbitrate by answering the complaint, engaging in discovery, and presently seeking summary judgment. (*Id.* at 10-11.) Sysco further argues that it has been prejudiced by Local 683's failure to timely move for arbitration. (*Id.* at 12.)

    "The final '[dispute-resolution] method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.'" *Standard Concrete Prod. Inc. v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 353 F.3d 668, 674 (9th Cir. 2003) (alterations in original) (quoting 29 U.S.C. § 173(d)). Where there is an arbitration clause in a labor contract, "the presumption of arbitrability is very strong." *Id.* (quoting *Dennis L. Christensen Gen'l Bldg. Contractor v. S. Cal. Conf. of Carpenters*, 952 F.2d 1073, 1076 (9th Cir. 1991)). However, the right to arbitration may be waived under certain circumstances. *See Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

Article 14, Section 2 of the CBA describes the agreed upon grievance procedures. (CBA at 17.) In relevant part, Article 14 provides:

> A grievance shall include any difference of opinion or dispute between the Employer and the Union or any employee covered by this Agreement regarding the interpretation of this Agreement. If a representative of the Employer and the Union cannot settle a grievance . . . the matter may be referred to arbitration . . . All requests to arbitrate under Step 3 must be furnished to the other party within thirty (30) calendar days of the completion of the Step 2 meeting of the grievance procedure or a longer time where mutually agreed upon by the parties in writing. . . . Any failure to move a grievance to arbitration within the timelines contained in this paragraph shall result in the grievance being withdrawn with prejudice.

(CBA at 17-18.) The court assumes, without deciding, that Sysco and Local 683 agreed to arbitration and that the present dispute falls within the agreement outlined in Article 14. Nevertheless, Sysco has sufficiently demonstrated that Local 683 waived its right to arbitration. First, Local 683 does not appear to dispute that it had knowledge of its right to compel arbitration under Article 14. Indeed, on July 30, 2019, Local 683 filed a grievance against Sysco contesting Sysco's disciplinary suspension of employees who refused to cross the picket line. (Dkt. 49, Fletcher Decl. ¶¶ 10-11.) Pursuant to Article 14, Local 683 then moved for arbitration of that dispute. (*Id.* ¶¶ 11-12.)

Second, Local 683 has actively litigated this action by initiating and responding to discovery, noticing depositions, stipulating to a protective order, and presently seeking summary judgment on the merits. (Dkts. 14, 24, 33, 37; Dkt. 56-3, Juang Decl. ¶¶ 3-8.) "Litigating in court is inconsistent with asserting one's arbitration right." *Am. Airlines, Inc. v. Mawhinney*, 904 F.3d 1114, 1120 (9th Cir. 2018), cert. denied, 139 S. Ct. 1457 (2019). Local 683's argument that it "informed [Sysco] in its Answer and in the Early Meeting of Counsel that [it] intended to bring a motion to compel arbitration", (dkt. 59, Reply at 10), is unpersuasive—"[a] statement by a party that it has a right to arbitration in pleadings

6


or motions is not enough to defeat a claim of waiver." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Further, not only was there an "extended silence and delay in moving for arbitration," Local 683 is presently seeking a decision on the merits in its motion for summary judgment, therefore expending "considerable time and effort" in litigating the case on the merits. *See id.* at 1125-26 (collecting cases).

Third, Local 683's inconsistent conduct would prejudice Sysco if this court were to order arbitration. Local 683 has litigated this action in federal court for more than a year. During that time, Local 683 initiated and responded to extensive discovery. The parties met and conferred regarding various scheduling matters to structure discovery and stipulated to a protective order for discovery. "When a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced." *Martin*, 829 F.3d at 1127. The Ninth Circuit has explained that "even if the parties exchanged the same information in court as they would have in arbitration, the process of doing so in federal court likely cost far more than determining the answer to the same question in arbitration." *Id.* at 1128. The additional time and cost of litigating in federal court, as opposed to the more expeditious system of arbitration, can be sufficient to find prejudice. *Id.* at 1127-28. The time and cost expended in this action in federal court is well beyond the "self-inflicted" wounds which are generally insufficient to find prejudice. *See id.* at 1126 (providing that self-inflicted wounds "include costs incurred in preparing the complaint, servicing notice, or engaging in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction or venue.").

The court concludes that Local 683 had knowledge of its right to arbitrate, acted inconsistently with the right to arbitrate for more than a year, and Sysco would be prejudiced if the court were to compel this action to arbitration at this stage. As such, even if Local 683 had a right to arbitrate this dispute, Local 683 has waived that right.

**B. Interpretation of the Collective Bargaining Agreement**

The central dispute is the proper interpretation of Article 10, Sections 1 and 2. Article 10 is entitled "Picketing, Boycotting, No Lockouts and No Strikes." Article 10, Section 1, entitled "Picket Lines," provides as follows:

> It shall not be a violation of this Agreement, nor cause for discharge, for any employee to refuse to cross a legitimate and bona fide picket line. A legitimate and bona fide picket line shall be defined, for the purpose of this Agreement, as a picket line that is sanctioned and/or authorized by the Joint Council of Teamsters No. 42.

(CBA at 16, Art. 10, § 1 (hereinafter, "Picket Line clause").) Article 10, Section 2, entitled "No Strike No Lockout," provides:

> The Employer, its officers and agents, agree that so long as this Agreement is in effect there shall be no lockout. The Union, its officers, agents and members agree that so long as this Agreement is in effect there shall be no strikes, sympathy strikes, sit-downs, slowdowns, or stoppages of work. If any conduct prohibited by this Article occurs, the Union shall immediately take all appropriate steps necessary to attempt to terminate such conduct.

(*Id.* § 2 (hereinafter, "No Strike clause").)

Local 683 argues that the Picket Line clause permitted Local 683 members, covered by the then-existing CBA, to refuse to cross the inventory control clerks' and quality assurance members' picket line at Sysco's premises notwithstanding the No Strike clause, because the Joint Council sanctioned the picket line. In essence, Local 683 argues that the Picket Line clause is an exception to the No Strike clause. (Local 683 MSJ at 8.) In support of its proposed interpretation, Local 683 submits a declaration from Local 683's principal officer, declaring that the Joint Council and other unions in Southern California "have many labor agreements with Article 10, Section 1 and the bargaining history is that the employees have the individual right to refuse to cross or honor a sanctioned picket

8

line at its location or any other locations of the Employer." (Dkt. 53, Fletcher Decl. ¶ 18.) The court notes however, that Local 683 has not submitted any evidence of other labor agreements with a similar Picket Line clause or of bargaining history.

Sysco argues that the Picket Line clause is not an exception to the No Strike clause and that instead, the Picket Line clause only "permits employees subject to a No Strike Clause with their own employer to honor a picket line at some *other employer's* premises." (Dkt. 56, Sysco Opp. at 6 (emphasis added).) In support of its proposed interpretation, Sysco submits the declaration of its Senior Director of Labor Relations declaring that "[t]he Picket Line Clause is intended to apply at locations away from Sysco Riverside's premises." (Dkt. 51-2, Oliver Decl. ¶ 2.) According to Sysco, the Picket Line clause allows Sysco's drivers who deliver Sysco's products to its customers to refuse to cross a picket line at the customers' location by contacting Sysco's dispatcher, the dispatcher then calls the customer, and the customer will then send its own employee to obtain the products outside the picket line. (*Id.* at 7; Oliver Decl. ¶ 2.) However, like Local 683, Sysco has not submitted any additional evidence of intent, such as practice, usage or custom, or bargaining history.

Construction of a collective bargaining agreement requires application of "federal common law principles of contract interpretation, which take into account the policies underlying our national labor laws." *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012). The court must "begin by looking to the [agreement's] express written terms[,] . . . [and] interpret written terms in the context of the entire agreement's language, structure, and stated purpose." *Id.* A collective bargaining contract, "[l]ike other contracts, [ ] must be read as a whole and in light of the law relating to it when made." *Mastro Plastics Corp. v. Nat'l Labor Relations Bd.*, 350 U.S. 270, 279 (1956). However, "[w]here a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact." *Arizona Laborers, Teamsters & Cement Masons Loc. 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512,

1515 (9th Cir. 1985) (quoting *Laborers Health & Welfare Trust Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir. 1983)).

To ascertain the parties' intent, "the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations. [ ] It may also consider the parties' conduct subsequent to contract formation . . . ." *Id.* at 1517-18 (internal alterations omitted) (citation omitted); *see also Int'l Bhd. of Elec. Workers, Local 387, AFL-CIO v. N.L.R.B.*, 788 F.2d 1412, 1414 (9th Cir. 1986) ("Other relevant considerations include the bargaining history, the context in which the contract was negotiated, the interpretation of the contract by the parties, and the conduct of the parties bearing upon its meaning."). "A district court should also 'consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.'" *Arizona Laborers*, 753 F.2d at 1518. "[W]hen an agreement's meaning is not clear on its face and contrary inferences as to intent are possible, there exists an issue of material fact for which summary judgment is ordinarily inappropriate." *Id.*

The court begins with the express written terms of the CBA and assumes that, at a minimum, what occurred in this case was a "work stoppage" or "slowdown" under the No Strike clause.[2] The Picket Line clause, read in isolation, is clear on its face. The Picket Line clause expressly provides that it "*shall not* be a violation" of the CBA for an employee to "refuse to cross a legitimate and bona fide picket line." (CBA at 16, Art. 10, § 1 (emphasis added).) A "bona fide picket line" is then defined as "a picket line that is sanctioned and/or authorized by the Joint Council of Teamsters No. 42. (*Id.*) Sysco

---

[2] The parties dispute whether Local 683's members' refusal to cross the Picket line was a "strike" or a "sympathy strike." (*See* Sysco MSJ at 9-14; Local 683 Reply. at 6-7.) The court need not resolve that dispute to decide the present motions. Local 683 does not appear to dispute that there was a work stoppage, or a slowdown, as set forth under the No Strike clause.

10

argues that the Picket Line clause should be read to apply only to third-party premises, however, the express language does not provide such limitation. As written, a member's right to refuse to cross a picket line is only limited by "legitimate and bona fide," i.e., a member may only refuse to cross a picket line that has been sanctioned and/or authorized by the Joint Council. The No Strike clause, read in isolation, is also clear on its face. The No Strike clause provides that "so long as this Agreement is in effect *there shall be no* strikes, sympathy strikes, sit-downs, slowdowns, or stoppages of work." (*Id.* § 2 (emphasis added).) Local 683 argues that the Picket Line clause should be read to be an exception to the No Strike clause, however, the express language of the No Strike clause, particularly the words "shall be no" does not appear to contemplate an exception. Similarly, the Picket Line clause does not expressly state that it is an exception to the No Strike clause. Read together, the express written terms are reasonably read to support contrary inferences, creating an ambiguity as it pertains to a members' right to refuse to cross a legitimate and bona fide picket line at Sysco's premises.

Next, the court considers the CBA's terms in light of the law that existed at the time of contracting. Sysco argues that Local 683 engaged in a strike, or at a minimum, a sympathy strike—strikes expressly prohibited by the No Strike clause. Sysco relies on the Ninth Circuit cases *Children's Hosp. Medical Ctr. of N. Calif. v. Calif. Nurses Ass'n*, 283 F.3d 1188 (9th Cir. 2002) and *Standard Concrete Prods. Inc. v. Gen. Truck Drivers, Office, Food & Warehouse Union Local 952*, 353 F.3d 668 (9th Cir. 2003) to argue that at the time of contracting, it was the parties' intent to waive sympathy strikes as evidenced by the language in the No Strike clause expressly prohibiting "sympathy strikes." (CBA at 16, Art. 10, § 2.) According to Sysco, the law as set forth in *Children's Hospital* and *Standard Concrete* support its interpretation of the CBA that the No Strike clause's waiver of a sympathy strike was clear and unmistakable and as such, not subject to an exception.

11

Assuming without deciding that Local 683's members' refusal to cross the picket line at Sysco's premises was a sympathy strike,[3] the court nonetheless concludes that the *Children's Hospital* and *Standard Concrete* do not support the conclusion, at this stage, that the parties mutually intended to waive sympathy strikes. *Children's Hospital* and *Standard Concrete* stand for the principle that union's waiver of sympathy strikes must be clear and unmistakable. *See Children's Hosp.*, 283 F.3d 1188; *Standard Concrete*, 353 F.3d 668. In *Children's Hospital*, the Ninth Circuit explained that a "clear and specific waiver of a Union's right to sympathy strike" is required because, "if a union is negotiating away employees' rights that are fundamental to the collective bargaining process, any proposed contract must unambiguously put those employees on notice of the waiver." 283 F.3d at 1192. "Whether a union has clearly and unmistakably waived sympathy strike rights of those it represents is determined by the provisions of the particular collective bargaining agreement at issue and the *intent of the parties*." *Id.* at 1194 (emphasis added). In *Children's Hospital*, the collective bargaining agreement contained a general no-strike clause which did not specifically state whether sympathy strikes were included or excluded. *Id.* at 1194. The Court held that a general no-strike provision "does not, simply by virtue of its incorporation in a collective bargaining agreement, constitute such a clear and unmistakable waiver." *Id.* at 1192. The Ninth Circuit proceeded to review extrinsic evidence to determine whether the evidence demonstrated the parties' mutual intent for the no-strike clause to include sympathy strikes. *See id.* at 1195. The Court concluded that evidence of bargaining history and past practice did not

---

[3] A sympathy strike "ordinarily refers to a strike conducted by workers belonging to one bargaining unit in support of a primary strike that is conducted by workers belonging to another bargaining unit at the same plant or shop. . . . The sympathy strikers do not have a primary objective of their own, but seek to assist the primary strikers to achieve their goals." *Children's Hosp.*, 283 F.3d at 1191.

12

support the conclusion that the union had clearly and unmistakably waived its right to engage in sympathy strikes. *Id.* at 1195-97.

Similarly, *Standard Concrete* also involved a collective bargaining agreement with a general no-strike clause which did not expressly include or exclude sympathy strikes. 353 F.3d at 672. There, the collective bargaining agreement provided two relevant provisions, first, that "No employee shall be discharged or discriminated against because of his/her . . . Union activities, including his/her refusal to cross a picket line approved by the Union" and second, that "For the period of this Agreement, neither the Union nor its members will cause or take part in any strike . . ." *Id.* at 672. The Ninth Circuit first held that the general no-strike clause was not a clear and unmistakable waiver of the union's right to engage in sympathy strikes. *Id.* at 676. The Court then concluded there was "evidence in the *express text* of the [ ] CBA that the parties did not intend to bar sympathy strikes when they agreed to a general no strike clause"—the provision of the collective bargaining agreement protecting an employee's right to refuse to "cross a picket line approved by the Union." *Id.* at 677 (emphasis in original). The Court reasoned that, "[if] [the employer] intended the no strike clause to encompass a ban on sympathy strikes, it would not have agreed to safeguard the jobs of [union] members that refuse to cross a picket line." *Id.* at 677.

Unlike *Children's Hospital* and *Standard Concrete*, the No Strike clause here expressly includes sympathy strikes. If the court were to stop there, the court may have readily concluded that the express text of the No Strike clause evidenced the parties' mutual intent to prohibit sympathy strikes. However, like *Standard Concrete*, the CBA also includes a picket line clause in which Sysco agreed to protect an employee's right to refuse to cross a legitimate and bona fide picket line, specifically, one which has been authorized and/or sanctioned by the Joint Council. (CBA at 16, Art. 10, § 1.) The text of the Picket Line clause, in light of the Ninth's Circuit reasoning in *Standard Concrete*, supports the inference that the parties did not mutually intend to waive an employee's

13

right to a sympathy strike which has been authorized by the Joint Council, as occurred in this case. Considering the clauses together and the facts and law set forth in *Children's Hospital* and *Standard Concrete*, the plain text of the CBA is inconclusive evidence of the parties' mutual intent.[4]

Next, the court looks to the "bargaining history, the context in which the contract was negotiated, the interpretation of the contract by the parties, and the conduct of the parties bearing upon its meaning," *Int'l Bhd. of Elec. Workers, Local 387*, 788 F.2d at 1414, and the "scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements," *Arizona Laborers*, 753 F.2d at 1518. Here to, the evidence supports contrary inferences creating a genuine dispute of material fact. Sysco's Senior Director of Labor Relations declares that "The Picket Line Clause is intended to apply at locations away from Sysco Riverside's premises." (Oliver Decl. ¶ 2.) Disputing Sysco's declaration, Local 683's officer declares that "the bargaining history is that the employees have the individual right to refuse to cross or honor a sanctioned picket line at its location or any other locations of the Employer." (Dkt. 53, Fletcher Decl. ¶ 18.) On summary judgment, neither Sysco nor Local 683 submitted any additional evidence regarding bargaining history, the context in which the contract was negotiated, or the conduct of the parties bearing upon its meaning. The parties also failed to present evidence of practice, usage and custom. Based on the evidence before the court at this stage, contrary inferences as to the parties' intent and genuine issues of material fact exist making summary judgment inappropriate. *Arizona Laborers*, 753 F.2d at 1518.

---

[4] Sysco also relies on *Sysco Minnesota, Inc. v. Teamsters Loc. 120*, 958 F.3d 757 (8th Cir. 2020), reh'g denied (June 17, 2020). That case does not support Sysco's argument, however. There, the Eighth Circuit read the language the no-strike clause to clearly and unmistakably waiving the union's right to sympathy strikes and the picket like clause as "carv[ing] out the ability to engage in a specific kind of sympathy strike . . . ." *Id.* at 766. That is precisely the interpretation Local 683 advocates for here, that the Picket Line clause is an exception to the No Strike clause.

14

## IV. CONCLUSION

For the reasons stated above, the court denies the parties' motions for summary judgment.

**IT IS SO ORDERED.**

Dated: July 30, 2021

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE